MARVIN, Judge.
When sued by the hospital, for medical services rendered her, the defendant brought a third-party demand against the group hospitalization insurer of the corporation which employed her.
Judgment was rendered for the hospital on the main demand and against the group insurer on the third-party demand. The insurer appeals judgment on the third-party demand, contending the group policy was terminated at the request of the employer-policyholder before the services were rendered defendant. We agree and reverse.
Judgment on the main demand was not appealed and the only issue is the existence of coverage for defendant after termination before she was informed of the termination.
The policy provided:
“This Contract may be terminated at any time by the Employer or the Company by giving written notice to the other at least 30 days prior thereto. This Contract shall be renewed from month to month unless terminated.”
The employer did not require its employees to contribute to their individual coverage. It elected to terminate the policy effective August 1, 1975, by notifying the insurer when it paid the July premium. The employer did not inform defendant or apparently any other employee of the termination. Defendant entered the hospital in September when she was still an employee.
The trial judge held that the insurer had a duty to notify the employees of the cancellation of coverage and that the insurer’s failure to notify rendered it liable for the hospital bill, citing R.S. 22:215; Greer v. Continental Casualty Company, 347 So.2d 70 (La.App.2d Cir. 1977), and Colvin v. Louisiana Hospital Service, Inc., 321 So.2d 416 (La.App.2d Cir. 1975).
Our recent case of Greer, citing Colvin and R.S. 22:215, did not hold that the insurer was obligated to notify the employee about changes in benefits or termination of group hospitalization coverage. Our holding in that respect was clearly stated:
“We hold that an employer policyholder of a group health and accident policy is obligated to inform the insured employee of the termination or modification of benefits under the policy.” Greer v. Continental Cas. Co., 347 So.2d 70, 72 (La.App.2d Cir. 1977).
There, the employee claimed the employer and the group insurer were solidarily liable for benefits or for an amount equal to the benefits provided by the original group policy where the benefits under the original policy had been changed by agreement between the insurer and the employer, but without delivery of the certificate to the employee required by R.S. 22:215.[1] The employee there contributed to the premium for his individual coverage under the original policy but not under the changed policy which bore the same numerical policy number.
In Greer, an exception of proscription and summary judgment were upheld by the lower court against the employee and in favor of both the insurer and the employer. We reversed and remanded for trial on the merits to allow a showing of the extent of the relationship of the employer with its employees and with the insurer and because a serious factual issue existed as to whether the employer presented to its employees a new certificate reflecting the change of benefits.
*239 Here the case was tried on the merits of the third-party demand and we are not faced with a claim by the defendant against her employer for not informing her that it had caused the policy to be terminated.
The general provisions (L.R.S. 22:611-668), as well as specific provisions (L.R.S. 22:211-223), of the insurance code apply to policies of this type. Section 636, which provides for cancellation of policies by the insurer, requires that the insurer inform the insureds or “other known person shown by the policy to have an interest in any loss” of the fact of cancellation. Section 637, which provides for cancellation by the insured makes no such requirement.
Subsection E of § 636, however, expressly provides that
“This Section shall not apply to contracts of life or health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid . .” (Emphasis supplied).
The obvious design of § 636—cancellation by the insurer—is to require not only that the insurer follow certain formalities (not less than five days notice before the effective date of cancellation etc.), but as well, that the insurer actually pay to the insured the unearned portion of the premium.
The policy here does not contain a provision for cancellation by either the insured or the insurer during the month for which premiums have been paid. The earlier quoted policy provision (renewal from month to month and cancelable upon at least 30 days notice) prevents our concluding otherwise. Thus, whether this policy was canceled by the insured-employer, by the insurer, or as the record reveals, by mutual agreement to terminate at the end of the month of July (the last month for which a premium was in fact paid), the insurer was not required by law to inform its policyholder’s employees of the fact of termination or cancellation. See Quindlen v. Prudential Insurance Company, 342 F.Supp. 9 (U.S.D.C.W.D.La.1972) for a discussion of R.S. 22:636.
R.S. 22:215(A)(3)(g) certificates contemplate some detailing or summarizing of the benefits and exclusions which are provided the employee who is covered by a group hospitalization or health and accident policy because the employee is not furnished the policy itself. Where the policy itself is terminated there is no rational need for the insurer to furnish § 215 certificates to the policyholder for delivery to the policyholder’s employees. It is nonetheless the duty of the employer to inform its employees of the termination or modification of the policy. In the case of modification of group benefits the § 215 certificates are required to be furnished by the insurer to the policyholder for the policyholder’s delivery to its employees. Greer, supra, Colvin, supra.
At the cost of defendant-appellee, judgment on the third-party demand is reversed.

. L.R.S. 22:215(A)(3)(g) provides:
“An individual application shall not be required from a person covered under such a blanket policy. The insurer shall furnish to the policyholder for delivery to the insured a certificate of insurance which shall disclose the benefits, limitations, exclusions and reductions contained in the policy and . . . any other relevant information, including the name and address of the insurer . .” (Emphasis supplied).